**ORION COMMUNICATIONS
LIMITED, Appellant,**

v.

**FEDERAL COMMUNICATIONS
COMMISSION, Appellee.**

**Biltmore Forest Radio, Inc.,
et al., Intervenors.**

**No. 96–1430.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 26, 1997.

Decided Dec. 19, 1997.

Stephen C. Leckar argued the cause and filed the briefs for appellant.

Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission, Washington, DC, argued the cause for appellee, with whom Gregory M. Christopher, Counsel, Washington, DC, was on the brief.

Donald J. Evans, Timothy K. Brady, Brentwood, TN, and Robert A. DePont, Annapolis, MD, were on the brief for intervenors, Biltmore Forest Radio, Inc., et al.

Before: EDWARDS, Chief Judge, GINSBURG, and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Orion Communications, Ltd. appeals from an order of the Federal Communications Commission rescinding Orion's interim authority to operate an FM station and granting that authority to a consortium of Orion's competitors whose license applications the Commission had previously rejected. We hold that the FCC acted arbitrarily and capriciously and we reverse the Commission's decision.

## I. Background

In 1990, after a contested hearing, an Administrative Law Judge granted the application of Orion Communications, Ltd. for a license to operate a new FM station in Biltmore Forest, North Carolina. *See National Communications Indust.*, 5 FCC Rcd 2862 (ALJ 1990). The Federal Communications Commission thrice confirmed that grant. *See National Communications Indust.*, 6 FCC Rcd 1978 (Review Bd.1991); *National Communications Indust.*, 7 FCC Rcd 1703 (1992) (denying applications for review); *Liberty Prod.*, 7 FCC Rcd 7581 (1992) (denying petition for reconsideration). In April 1993, while rejected applicants had still further appeals pending before the Commission and this court, the FCC issued to Orion a construction permit "conditioned on the final outcome of Docket 88–577," i.e., the license proceeding, noting that "[a]ny construction pursuant to this permit prior to this docket becoming final is at the permittee's sole risk." After discovering that it could save money by leasing a tower rather than building its own, Orion asked the Commission to modify its construction permit. In November 1993 the Commission issued a second, modified permit, but only after extracting from Orion a promise to begin construction immediately.

Meanwhile, in December 1993 this court decided *Bechtel v. FCC,* 10 F.3d 875, in which we held that the Commission's use of the "integration" criterion in comparative hearings was arbitrary and capricious. Shortly thereafter the Commission announced that it would "hold[ ] in abeyance the processing of applications and the adjudication of hearing proceedings .... while it consider[ed] appropriate action" in light of *Bechtel. Public Notice, FCC Freezes Comparative Proceedings,* 9 FCC Rcd 1055 (Feb. 25, 1994).

In March 1994, acting upon the basis of *Bechtel,* we reversed the orders of the Commission granting Orion's license application and denying the applications of its competitors, and remanded the entire matter to the FCC for reconsideration. *See Biltmore Forest Broadcasting FM, Inc. v. FCC,* No. 92–1645, 1994 WL 116196 (Mar. 15, 1994). The previously rejected applicants then petitioned the Commission to rescind the construction permit it had issued to Orion.

Before ruling upon that petition the Commission on June 27, 1994 issued to Orion yet a third construction permit, this time for a broadcast station in Asheville auxiliary to the primary FM station in Biltmore Forest. Orion then completed construction of its station, began to broadcast program tests, and on August 3, 1994 applied for an operating license. The next day the Commission acted to "clarify" its earlier Public Notice; it stated that "[w]here program tests have already commenced, operations may be continued so as not to deprive the public of existing service." *Public Notice, Modification of FCC Comparative Proceedings Freeze Policy,* 9 FCC Rcd 6689 (Aug. 4, 1994). Because Orion had begun broadcasting before August 4, the Audio Services Division of the FCC later denied the request of Orion's competitors to rescind its construction permit.

The rejected applicants sought reconsideration of their petition to rescind Orion's permit and also, acting as a nonprofit consortium under the name Biltmore Forest Radio Inc. (BFRI), themselves applied for joint interim operating authority. The Commission reversed the Audio Services Division and rescinded Orion's construction permit. According to the Commission, although Orion was "technically within the parameters described by the Public Notice [of August 4] for continued operation .... the Public Notice did not contemplate circumstances ... where an applicant did not commence [broadcasting program tests] until more than four months subsequent to the court Order reversing the grant of that applicant's permit." *Orion Communications, Ltd.,* 10 FCC Rcd 13066 (Nov. 29, 1995). The Commission also instructed its staff to accept BFRI's application for joint interim operating authority pending the Commission's final grant of a license. Orion petitioned for reconsideration. The Commission denied the petition, explaining that Orion's construction of the station and commencement of broadcasting was "clearly unreasonable" in light of this court's having earlier reversed and remanded the Commission's decision granting Orion's application. *See Orion Communications, Ltd.,* 11 FCC Rcd 19589 (Oct. 22, 1996). BFRI began broadcasting six months later, on June 2, 1997.

## II.  Analysis

We reverse a Commission decision granting or denying a broadcast license only if that decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see DIRECTV, Inc. v. FCC,* 110 F.3d 816, 826 (D.C.Cir.1997). The Commission's decisions in this case clearly fail to meet even this deferential standard.

The Commission recognized that it had the "discretion to maintain [Orion's] existing service upon ... remand ... in order to avoid disruption of service to the public." *See* 11 FCC Rcd 19589 (1996). In nonetheless rescinding Orion's authority to provide such service, the Commission abused its discretion and acted arbitrarily and capriciously in the

following respects: The Commission (1) erroneously concluded that Orion had been "clearly unreasonable" in proceeding with construction and broadcast tests after this court, in remanding the case against Orion for reconsideration in the wake of *Bechtel,* had vacated the Commission's decision granting Orion's license application; (2) created an unfounded exception to the general rule announced in its Public Notice of August 4, 1994 that a station already broadcasting could continue to do so; (3) failed to follow the standards it had set for itself in 47 C.F.R. § 73.3592(b), in that it considered neither the equities of the situation nor other aspects of the public interest; and (4) departed from its own recent precedent without providing a reasoned explanation for so doing.

### A.  Orion's conduct

■ The Commission argues that this court's remand of March 15, 1994, by vacating the Commission order granting Orion's license, served automatically to revoke Orion's construction permit and that Orion therefore acted unreasonably in continuing to build its station. Orion argues first that it acted reasonably in continuing to build its station and alternatively that the FCC had to give it notice before the revocation of its license could take effect. We agree with the first point and so need not resolve the second.

Orion reasonably inferred from the Commission's granting it a construction permit for an auxiliary station in June 1994—well after our decision remanding the matter of its primary license for reconsideration after *Bechtel*—that its permit to construct the primary station was still valid. An auxiliary station is by its nature dependent upon there being a primary station, as the Commission's explanation accompanying its grant of the auxiliary license makes clear. Further, the grant of the initial construction permit for the primary station had conferred upon Orion the authority not only to build the station but also, without obtaining further authorization, to begin program tests, as Orion did on July 29, 1994. *See* 47 C.F.R. § 73.1620(a)(1).

Orion acted reasonably not only in beginning but also in continuing to operate because the Public Notice of August 4, 1994 by its terms authorized Orion to do so. Regardless of whether Orion acted reasonably, however, we do not see how the Commission could rationally conclude that Orion's conduct had been "clearly unreasonable." As we have seen, the Commission's staff denied BFRI's request to rescind Orion's permit precisely because it understood the Public Notice to authorize Orion's continued operation of the station. The Commission is of course at liberty to rule that its staff erred, but it cannot say in the present circumstance that Orion was clearly unreasonable to have come to the same arguably erroneous conclusion.

Nor did Orion's competitors' filing a request for rescission make Orion's operation of the station unreasonable, as the Commission now argues; if it had, then every permit-holder that began to broadcast despite continuing appeals would be acting unreasonably. The provision of service to the public would be long delayed if successful applicants were required to wait until every last appeal was resolved before beginning to broadcast.

We hold, therefore, that the Commission acted arbitrarily and capriciously in basing its decision to revoke Orion's interim operating authority in any part upon Orion's having acted unreasonably in building and operating its station.

**B. Section 73.3592(b)**

■ Section 73.3592(b) states that the Commission "may, if the public interest will be served thereby," grant interim operating authority to a coalition of "two or more" competing applicants. In its decision the Commission took the position that this section applies to this competitive license proceeding, and upon appeal argues that § 73.3592 actually requires that it authorize joint interim operation. Orion, in its reply brief, strenuously resists the notion that the regulation has any application to the present situation.

By its terms, § 73.3592(b) seems to apply only to those cases in which a hearing is yet to be held. Contrary to the Commission's

argument, our decision in *Consolidated Nine* did not extend the reach of this provision, but merely held that the Commission could not apply it to one applicant for interim operating authority while refusing to apply it to another applicant. *See Consolidated Nine, Inc. v. FCC*, 403 F.2d 585 (D.C.Cir.1968).

The Commission's new characterization of § 73.3592, and its new reading of *Consolidated Nine*, are also inconsistent with its own recent decision permitting another broadcaster to continue operating on an interim basis after the grant of its license was reversed and remanded by this court pursuant to *Bechtel. See Highlands Broadcasting Co.*, 9 FCC Rcd 5746, 5747 (1994). In that case the Commission explained that *Consolidated Nine* had required the agency to conduct a further hearing after remand with new applicants and that "in the absence of those circumstances, precedent supported an order permitting the grantee to continue its existing service.... [N]othing in *Consolidated Nine* ... would deprive us of the discretion to allow the existing service to continue if ... termination of the service would not serve the public interest." *Id.* at 5747.

In any event, § 73.3592(b) clearly requires the Commission to consider the public interest in deciding whether to award joint operating authority. Therefore, even if that section does apply—a matter that we need not decide today—the Commission was bound to consider the public interest before deciding to transfer interim operating authority from Orion to BFRI.

The Commission has stated that the public interest is not served by "withdrawing ... existing local service from its listeners or by having ... existing facilities lie fallow." *Highlands Broadcasting Co.*, 9 FCC Rcd 5746, 5747 (1994); *David J. Bott*, 9 FCC Rcd 6426, 6427 (1994). Yet when the Commission rescinded Orion's interim operating authority, Orion was on the air and providing local service. The rescission disrupted that service, in derogation of the very interest that the Commission had sought to protect when it permitted all other stations broadcasting as of August 4 to continue doing so. BFRI was not ready to provide service when it

applied for or when it received interim operating authority; indeed, it took six months to become ready, during which time the Commission looked to Orion to provide service to the public.

The Commission has also found in the past that a significant improvement in service must be counted in furtherance of the public interest. *See Western Television Co.,* FCC 74–753 (1974); *see also Bechtel v. FCC,* 10 F.3d 875, 882 (D.C.Cir.1993) (integration criteria invalidated for failing to advance valid goal of "pick[ing] owners who are aware of and responsive to their communities' special needs"). Here the ALJ found that Orion's broadcasts would be produced by Zebulon Lee—who has spent more than 50 years broadcasting in his community—and by Lee's wife and son, who also have many years of experience working at the family's former station in Asheville. (The family sold that AM station, as the Commission required, in the expectation of receiving their FM license). The ALJ also found that Mrs. Lee planned to devote her time at the FM station entirely to public affairs and public service, "ascertain[ing] local needs and problems" and then "plan[ning] and coordinat[ing] station public service activities and ... programs responsive to issues of concern in the station's service area." *National Communications Indust.,* 5 FCC Rcd 2862 at 15. Both of these factors contributed to the ALJ's conclusion that Orion would "clearly ... offer the best practicable service to the public," *id.* at 19. Nonetheless, the Commission did not explain why—or even whether— it thought BFRI would better serve the public's interest in responsive programming than would Orion.

Indeed, we note that three of the four applicants in the BFRI consortium had been rejected as licensees in one way or another for lack of integrity: per the ALJ, one "lack[ed] the requisite character," another had submitted an "abjectly false" certification, and the third claimed a minority female owner whose role was merely "window dress[ing]" for the true owner's "sham" application. 5 FCC Rcd 2862 at 6, 20 n.7, 12.

The Commission has long recognized equitable factors as a component of the public interest. In *RKO General, Inc.,* FCC 82–104 (1982), it permitted a broadcaster whose license it had revoked to keep operating pending the completion of appellate review in part because of its felt "responsibility to ensure a continuation of service to the people of the ... area; [and upon] considerations of equity and fairness with respect to the employees of the affected station."

In the current case, however, the "equities" received short shrift. In its first decision to displace Orion in favor of BFRI, the Commission stated only "we do not believe the equities here—where Orion clearly completed construction months after learning that its authorization was *not* valid and where other applicants stand ready to provide service themselves—weigh in Orion's favor." 10 FCC Rcd 13066, 13067 (Nov. 29, 1995). Upon reconsideration, the Commission elaborated only to the extent of saying that it was "not persuaded by Orion's contention that equity favors its continued operation ... given that Orion completed construction after the court had reversed and a request for rescission had been filed." 11 FCC Rcd 19589, 19593 (Oct. 22, 1996).

These abbreviated discussions entirely fail to consider any of the equitable factors that favor Orion. Orion had successfully defended its license for four years, readily rebuffing attacks launched by the rejected applicants. Indeed, Orion's license would probably have become final long before our decision in *Bechtel* unsettled the matter if only the rejected applicants had not, as the Commission found, filed "repetitious" appeals, *Liberty Prod.,* 8 FCC Rcd 4264 (1993), in order to "debat[e] matters on which [the Commission] ha[d] already deliberated and spoken." *Liberty Prod.,* 7 FCC Rcd 7581 (1992). Nor was this court's vacatur of the Commission's order granting Orion the license prompted by any fault of Orion's; rather, it was required by our invalidation in *Bechtel* of the Commission's integration criterion as arbitrary and capricious. *See Biltmore Forest Broadcasting FM, Inc. v. FCC,* No. 92–1645, 1994 WL 116196 (Mar. 15, 1994).

In addition, Orion's investment in building the station in reasonable reliance upon the Commission's conditional grant of the con-

struction permit, of a modification in November 1993, and of an auxiliary permit in June 1994, weighs in favor of permitting Orion to continue operating until the license is finally granted. The Commission gave no weight to Orion's reliance interest on the ground that, when it initially sought the construction permit, Orion had accepted the risk that it would not get the license. True, but irrelevant. The risk that Orion accepted was that in the end it would not get the permanent license to operate. Based upon prior Commission practice, Orion reasonably expected that it could stay on the air at least until the Commission made a final decision in the matter—which it is yet to do. Even now Orion appeals only the rescission of its interim operating authority; Orion still bears the risk that it willingly accepted, namely, that it will not finally be awarded the license.

The Commission's decision would, of course, be entitled to our deference had it reached a reasoned conclusion that the public interest factors favoring the award of interim operation authority to BFRI outweigh the public interest considerations favoring Orion's continued operation. As indicated above, however, the Commission's decision was based solely upon its misapprehension that Orion had behaved unreasonably. The resulting tilt in the Commission's weighing of the equities and its woefully partial consideration of the other components of the public interest make its decision arbitrary and capricious.

## C. The Public Notice

The Commission acted arbitrarily in distinguishing Orion's situation from the situation contemplated in its Public Notice of August 4, 1994, which permitted then-operating stations to continue broadcasting. The only difference identified by the Commission is that Orion, unlike most other stations, did not begin operating until after the Commission had issued the freeze order of February 25, 1994, and we had remanded the challenge to its license in March 1994. As discussed above, however, the Commission erred in drawing an unfavorable inference from Orion's actions. Indeed, the Commission can

hardly claim that the initial freeze order put Orion on notice that it should not begin broadcasting: if the first order had been clear, then the Commission would not have had to issue another order for the express purpose of clarifying it.

## D. Commission precedent

■ The decision under review is also inconsistent with the Commission's previous decisions in *Highlands* and *Bott.* In *Highlands* the Commission stated that the public interest would be served by maintaining the status quo after we had, in light of *Bechtel,* reversed and remanded the Commission's licensing decision. *See Highlands Broadcasting Co., Inc.,* 9 FCC Rcd 5746 (1994). Although the Commission now attempts to distinguish *Highlands* on the ground that the licensee in that case had begun broadcasting before the remand, it fails to explain how that difference is relevant here. Even if the Commission had justified rescinding Orion's license as necessary in order to avoid benefitting the incumbent operator during the proceedings on remand—as the Commission now suggests it should have done—that rationale would seem to apply equally to an incumbent that had begun operating before the remand.

Nor can the Commission distinguish its decision in *Bott* from the decision under review. There as here the initial licensee did not begin broadcasting program tests until after the remand. The Commission nonetheless permitted the licensee to remain on the air until the Commission reached a final decision. *See Bott,* 9 FCC Rcd 6426 (1994).

■ Although the Commission is not necessarily bound by its prior decisions, particularly in cases where it must weigh the public interest and the equities in an individualized fashion, the Commission is bound to provide an explanation when it departs from a clear precedent. Here the Commission provided no such explanation of its prior inconsistent decision in *Bott,* which compels the conclusion that the Commission acted arbitrarily and capriciously in this case.* *See New Orleans Channel 20, Inc., v. FCC,* 830 F.2d 361, 366 (D.C.Cir.1987).

---

* In a footnote to its initial decision rescinding

Orion's permit the Commission did attempt to

## 182

### E. Undue Delay

This matter has been before the Commission for a long time—ten years since the license applications were filed—and still the Commission has not finally settled upon a licensee. In addition to reinstating it as the interim licensee, therefore, Orion asks us to order the Commission to expedite its final selection process. That we will not do, in part because the Congress has recently enacted legislation relevant to the timing of the Commission's final decision. Section 3002 of the Balanced Budget Act of 1997, P.L. 105–33 (Aug. 5, 1997) provides that, in any pending case involving mutually inconsistent license applications (such as this one) that has not been settled by February 1, 1998, the FCC may auction off the license. The Commission has represented to the court that it plans to act promptly to implement this legislation; specifically, the Commission has said it would commence rulemaking in November 1997 and adopt a Report and Order in January 1998. We take the Commission at its word.

### III. Conclusion

The Commission rescinded Orion's interim operating authority upon the erroneous premise that Orion had acted unreasonably in completing construction of and starting to operate its station. The Commission acted without regard to equitable considerations favoring Orion, other components of the public interest, or its own recent precedents. We therefore remand this matter to the Commission with instructions to reinstate Orion forthwith as the interim licensee pending such further proceedings as the Commission may conduct in order to choose either an interim or a final licensee. The Order under review is therefore

*Reversed.*

---

distinguish *Bott* on the ground that the licensee in that case had begun operating before the remand. *See Orion Communications, Ltd.,* 10 FCC Rcd 13066, 13067 n.6 (1995). Commission counsel now acknowledges, however, that "[u]pon a closer review of the facts in *Bott*" that case "is not in fact distinguishable" on this ground. Perhaps that is why upon reconsideration of its decision regarding Orion the Commission failed even to mention *Bott. See Orion Communications, Ltd.,* 11 FCC Rcd 19589 (1996).